**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Jesmin Rashid,**<br><br>                              **Plaintiff,**<br><br>       v.<br><br>**Northfield Bank,**<br><br>                              **Defendant.** | **COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Jesmin Rashid, by and through her attorneys, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

## INTRODUCTION

1. Defendant Northfield Bank is a full-service community bank serving metropolitan New York and New Jersey with 38 retail branches.

2. This lawsuit challenges Northfield Bank's unlawful discrimination against Plaintiff Jesmin Rashid. Northfield retaliated against Plaintiff and terminated her employment because she was pregnant. Northfield also failed to properly compensate Plaintiff for all hours worked.

3. Northfield Bank's conduct violates the New York City Human Rights Law (NYCHRL), which prohibits unlawful discrimination in employment on the basis of pregnancy or perceived pregnancy, through its prohibitions on discrimination based on gender. N.Y.C. Admin. Code § 8–107(22). The NYCHRL also requires employers to reasonably accommodate the "needs of an employee for her pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job, provided that such employee's

1

pregnancy, childbirth, or related medical condition is known or should have been known by the employer." *Id.* Northfield also violated N.Y. Lab. Law § 191 by failing to pay Plaintiff proper wages for all hours worked.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because the Parties are citizens of different states, and the amount in controversy exceeds $75,000.

5. Plaintiff is a citizen and resident of Staten Island, New York. Defendant is a citizen of New Jersey and Delaware because its principal place of business and headquarters are located in Woodbridge, New Jersey, and Defendant is incorporated in Delaware. Therefore, diversity of citizenship exists between the Parties.

6. Plaintiff also seeks damages greater than the $75,000 amount in controversy threshold for diversity jurisdiction. Specifically, Plaintiff is seeking combined back pay, front pay, emotional distress, and punitive damages in excess of $175,000. Therefore, the amount in controversy requirement is satisfied.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in Staten Island, New York, which is located in this District.

## PARTIES

**Plaintiff Jesmin Rashid**

8. Ms. Rashid is a Muslim woman of Bangladeshi descent. She lives in Staten Island, New York.

9. Ms. Rashid worked at the Northfield Bank branch located at 385 Bay Street, Staten Island, New York, from approximately August 2017 through December 2017. Ms.

Rashid was then transferred to a Northfield Bank branch located at 150 Greaves Lane in Staten Island, New York, and worked there until she was terminated on June 28, 2018.

**Defendant Northfield Bank**

10. Defendant Northfield Bank is a Delaware corporation headquartered in Woodbridge, New Jersey.

11. Northfield Bank has approximately 400 full-time employees.

12. Northfield Bank has 38 branches across Brooklyn and Staten Island as well as in Hunterdon, Mercer, Union and Middlesex counties in New Jersey.

13. Northfield Bank boasts $5.6 billion in assets.

14. Northfield Bank provides banking and financial services to corporate and individual customers.

## STATEMENT OF FACTS

15. In August 2017, Ms. Rashid was hired as a non-exempt teller at the Northfield Bank branch located at 385 Bay Street, Staten Island, New York. Northfield compensated Ms. Rashid at an hourly rate of $14.

16. After about three and a half months at Northfield Bank, Ms. Rashid received a positive performance evaluation, which resulted in an approximately 3% pay increase. Shortly thereafter, Ms. Rashid's District Manager, Kevin Drumgoole, informed Ms. Rashid that he wanted to transfer her to a new branch.

17. In approximately December 2017, Ms. Rashid began to work at the new Northfield branch, located at 150 Greaves Lane, Staten Island, New York.

18. Ms. Rashid continued to receive positive feedback at work and was sent to train for a promotion.

19. Ms. Rashid typically worked five days a week, from 8:00 a.m. to 5:00 p.m., which included a one-hour unpaid meal break. On some days, she would work 9:00 a.m. to 6:00 p.m. Ms. Rashid worked 40 hours per week. Ms. Rashid clocked out for a one-hour lunch break each day she worked.

20. During her unpaid lunch hour, Ms. Rashid would often be called by her supervisor, Assistant Branch Manager Kelly Tello, to the front of the branch to assist current customers and meet with potential new customers. Ms. Rashid would not clock back in when she performed this work during her lunch hour because she was responding to urgent situations such as upset customers. Ms. Rashid estimates that she worked for half or more of her unpaid one-hour daily lunch break approximately four days per week.

21. Ms. Tello warned female employees of the branch, including Ms. Rashid, not to get pregnant and demanded they immediately inform her if they became pregnant. Ms. Tello specifically told Ms. Rashid that Northfield had "made me lose one baby."

22. On or about March 29, 2018, Ms. Rashid learned that she was pregnant. A few weeks later, when she was approximately three months pregnant, Ms. Rashid notified Northfield of her pregnancy by informing both Ms. Tello and the Human Resources department.

23. Only two days after Ms. Rashid notified Northfield of her pregnancy, Ms. Tello disciplined Ms. Rashid by writing her up for allegedly "disrespecting" her. When Ms. Rashid asked what she had done that was "disrespectful," Ms. Tello did not provide an answer.

24. Ms. Rashid was often ill during her pregnancy and suffered from: (a) blurry vision; (b) nausea; (c) headaches; (d) severe stomach pain; and (e) urinary incontinence. On at least two occasions, Ms. Rashid was so ill that she had to leave work early to obtain treatment at the Seaview North Hospital emergency room.

25. Ms. Rashid's pregnancy-related health issues sometimes made it difficult for her to concentrate at work. On one occasion, Ms. Rashid forgot to process an ATM deposit, resulting in an undercount in her cash box. The next day, June 18, 2018, despite Ms. Rashid being an experienced bank teller, and without any advance notice or progressive discipline, a Northfield Branch Manager named Laurie instructed Ms. Rashid to go to a full-day "new-hire" training located at a Northfield branch at 1731 Victory Boulevard in Staten Island.

26. After Ms. Rashid arrived at the "new-hire" training, which was useless for her as an experienced bank teller and therefore humiliating, she began to experience significant nausea and stomach pain, which she initially tried to conceal in order to continue with the training. Eventually, Ms. Rashid could no longer conceal her discomfort and rushed to the bathroom at which point her clothing was soiled, which made her fear for the status of her pregnancy.

27. After leaving the bathroom, Ms. Rashid walked back toward the "new-hire" training and sat on the hallway floor until her pain diminished enough for her to reenter the training room. Ms. Rashid informed the instructor that she was ill, then called her husband, who came to the training and took her to the emergency room.

28. Ms. Rashid was subsequently discharged with a physician's note stating that she should not return to work until she had seen her obstetrician.

29. Ms. Rashid provided this physician's note to Ms. Tello.

30. Following her trip to the emergency room, Ms. Rashid's obstetrician prescribed additional testing, after which the doctor told her that she would have to go on disability leave.

31. Ms. Rashid provided this physician's note to Northfield, as well.

32. However, on Thursday, June 28, 2018, shortly before Ms. Rashid received her test results, Northfield terminated her.

5

33. After her termination, two Northfield Human Resources personnel met with Ms. Rashid to discuss her termination and informed Ms. Rashid that she had been fired because she "left training."

34. Ms. Rashid explained that she had been so ill from her pregnancy when she left the training that she had required a trip to the emergency room, and that she had shown Ms. Tello the note from her doctor.

35. Ms. Rashid has been unable to obtain comparable employment since her termination from Northfield.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (Northfield's Per Se Violations of the NYCHRL)

36. Plaintiff incorporates by reference all preceding paragraphs.

37. The NYCHRL prohibits unlawful discrimination in employment, public accommodations, and housing, on the basis of pregnancy or perceived pregnancy, through its prohibitions on discrimination based on gender. N.Y.C. Admin. Code § 8-107(22). Treating an individual less well because of their pregnancy is discrimination under the NYCHRL.[1]

38. Before and during Ms. Rashid's pregnancy, Northfield violated this prohibition through several actions. First, Ms. Rashid's supervisor, Kelly Tello, treated Ms. Rashid less well by warning her not to become pregnant and demanding to be notified immediately if she became pregnant.

---

[1] *See* New York City Commission on Human Rights Legal Enforcement Guidance: Pregnancy Discrimination, Section III.A., *available at*: https://www1.nyc.gov/site/cchr/law/pregnancy-legal-guidance.page.

39. Second, Ms. Rashid was disciplined for a vague, pretextual reason only two days after informing her supervisor that she was pregnant.

40. Third, Northfield treated Ms. Rashid less well by disciplining and terminating her due to her pregnancy-related medical conditions. Critically, Northfield terminated Ms. Rashid for leaving a training to go to the emergency room for treatment related to her pregnancy.

41. Northfield took adverse action against Plaintiff by discriminating against her due to her pregnancy in violation of the NYCHRL.

42. As a result of Northfield's actions, Plaintiff has been deprived of her rights and has lost income, earnings, and other benefits.

43. In addition to monetary damages, Plaintiff seeks injunctive and declaratory relief to correct Northfield's unlawful policies and practices as well as attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Northfield's Violations of the NYCHRL's Reasonable Accommodations Provision)

44. Plaintiff incorporates by reference all preceding paragraphs.

45. The New York City Human Rights Law requires that, "[w]hen an employer learns, either directly or indirectly, that an employee requires an accommodation due to pregnancy, childbirth, or related medical condition, an employer must engage in a cooperative dialogue with the employee. Where an employee has not requested an accommodation, the employer has an affirmative obligation to initiate a cooperative dialogue when the employer: (1) has knowledge that an employee's performance at work has been affected or that their behavior at work could lead to an adverse employment action; and (2) has a reasonable basis to believe that the issue is related to pregnancy, childbirth, or related medical condition."[2]

---

[2] *See id.* at Section III.B.1.a.

7

46. Northfield failed to affirmatively engage in a cooperative dialogue with Ms. Rashid even after it knew that her medical issues were clearly related to pregnancy and that her performance at work had been affected.

47. Instead of engaging in a cooperative dialogue and attempting to accommodate Ms. Rashid, Northfield terminated Ms. Rashid's employment: (a) after the bank had actual knowledge of Ms. Rashid's need for a pregnancy-related work accommodation; (b) after Ms. Rashid provided the bank with several physician's notes reflecting requests for accommodations; and (c) after she had been to the emergency room several times because of her pregnancy.

48. Accordingly, Northfield failed to engage in the interactive process required by the NYCHRL.[3]

49. Several pregnancy-based accommodations would have been reasonable and appropriate to offer Ms. Rashid and would not have caused an undue hardship to Northfield. Such accommodations would have included: (a) unpaid leave; (b) an adjustment of her start or end time; (c) a reduced or modified work schedule; and/or (d) desk duty or light duty.[4]

50. As a result of Northfield's actions, Plaintiff has been deprived of her rights and has lost income, earnings, and other benefits.

51. In addition to monetary damages, Plaintiff seeks injunctive and declaratory relief to correct Northfield's unlawful policies and practices as well as attorney's fees and costs.

---

[3] *See id.* at Section III.B ("While reasonable accommodations for individuals with disabilities under the NYCHRL have historically included medical conditions related to pregnancy or childbirth, the enactment of the Pregnant Workers Fairness Act obviated the need to request accommodations in employment through the disability framework. Employees can now request accommodations from employers based on pregnancy, childbirth, or related medical condition regardless of whether their medical condition amounts to a disability.").
[4] *See id.* at Section III.B.4.a.

## THIRD CLAIM FOR RELIEF
### (Northfield's Violations of the NYCHRL's Retaliation Provisions)

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Ms. Rashid's need for leave to receive emergency medical treatment for her pregnancy-related condition constituted a protected activity under the NYCHRL. N.Y.C. Admin. Code § 8- 107(22) at 12 ("In the context of employment, the act of requesting a reasonable accommodation based on pregnancy, childbirth, or related medical condition, or engaging in a cooperative dialogue with an employer based on such request, *is protected activity under the NYCHRL. An adverse employment action based on such activity is therefore retaliation under the NYCHRL.*") (emphasis added).

54. The New York City Council recently amended the NYCHRL to make explicit that requests for accommodation are protected activity. N.Y.C. Admin. Code § 8-107(7) ("It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . requested a reasonable accommodation under this chapter…").

55. Ms. Rashid initially engaged in protected activity when she notified Northfield of her pregnancy during April 2018, when she was three months pregnant, which put Northfield on notice regarding her eventual need for maternity leave as a reasonable accommodation of her pregnancy. Ms. Rashid engaged in further protected activity when she required accommodations to go to the emergency room for her pregnancy-related emergency medical condition, when she asked for and/or took several days of leave from work for medical evaluations, and informed Northfield that she would need to go on disability leave following her illness at the training session.

9

56. Northfield retaliated against Ms. Rashid because of her request for pregnancy-based leave by: (a) falsely claiming that Ms. Rashid had disrespected a supervisor just two days after Ms. Rashid had disclosed her pregnancy to Northfield (by the same manager who warned employees not to get pregnant); (b) forcing Ms. Rashid to attend a useless and humiliating training session due to her pregnancy; (c) refusing to accommodate Ms. Rashid's need for disability leave recommended by Ms. Rashid's obstetrician; (d) terminating Ms. Rashid's employment on June 28, 2018, because of her visit to the emergency room during her use of protected pregnancy-based emergency leave; and (e) terminating her before Ms. Rashid received test results from her obstetrician.

57. Ms. Rashid's engagement in the protected activity described above was at least a motivating factor in Northfield's termination of her employment and the accompanying retaliation.

58. Northfield willfully violated the NYCHRL by retaliating against Plaintiff for her request for pregnancy-based and/or disability-based leave.

59. As a result of Northfield's actions, Plaintiff has been deprived of her rights and has lost income, earnings, and other benefits.

60. In addition to monetary damages, Plaintiff seeks injunctive and declaratory relief to correct Northfield's unlawful policies and practices as well as attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Northfield's Violations of the NYCHRL's Interference Provisions)**

61. The NYCHRL makes actionable intimidation, threats, or interference with a person's exercise or enjoyment of rights protected under section 8-107 of the New York City Administrative Code, or a person's encouragement of another person's exercise or enjoyment of such rights—or attempts to do so.

62. Northfield's conduct additionally interfered with Ms. Rashid's right not to be discriminated against on account of a protected classification, her right to the interactive reasonable accommodations process, and her right not to be retaliated against for protected activity.

63. Northfield violated the prohibition on interference with the right not to be discriminated against on account of pregnancy through Ms. Tello warning Ms. Rashid not to become pregnant and demanding to be notified immediately if she became pregnant, and through Northfield's termination of Ms. Rashid because of her pregnancy. Specifically, Northfield terminated Ms. Rashid for leaving her training to go to the emergency room for treatment related to her pregnancy. Moreover, Ms. Rashid was disciplined for a vague, pretextual reason only two days after informing her supervisor that she was pregnant.

64. Northfield violated the prohibition on interference with the right to accommodation. Northfield terminated Ms. Rashid's employment: (a) after she had a pregnancy-related need for a work accommodation; (b) provided the bank with physicians' notes; and (3) had been to the emergency room several times because of her pregnancy. Accordingly, Northfield failed to engage in the interactive process required by the NYCHRL.

65. Northfield violated the prohibition on interference with the right not to be retaliated against for protected activity. Ms. Rashid initially engaged in protected activity when she notified Northfield of her pregnancy during April 2018, when she required leave and/or took leave to go to the emergency room for her pregnancy-related emergency medical condition, when she asked for and/or took several days of leave from work for medical evaluations, and when she informed Northfield that she would need to go on disability following her illness at the training session.

66. Northfield further retaliated against Ms. Rashid because of her request for pregnancy-based leave: (a) by falsely claiming that Ms. Rashid had disrespected a supervisor just two days after Ms. Rashid had disclosed her pregnancy to Northfield (by the same manager who counseled employees not to get pregnant); (b) by forcing Ms. Rashid to attend a useless and humiliating training session due to her pregnancy; (c) by refusing to accommodate Ms. Rashid's need for disability leave recommended by Ms. Rashid's obstetrician; (d) by terminating Ms. Rashid's employment on June 28, 2018, because of her visit to the emergency room during her use of protected pregnancy-based emergency leave; and (e) by terminating her before Ms. Rashid received test results from her obstetrician – and mere months before Ms. Rashid's due date. Ms. Rashid's engagement in this protected activity was at least a motivating factor in Northfield's termination of her employment and the accompanying retaliation.

67. Northfield's actions interfered with Ms. Rashid's right not be discriminated against on account of a protected classification, her right to the interactive reasonable accommodations process, and her right not to be retaliated against for protected activity.

68. As a result of Northfield's actions, Plaintiff has been deprived of her rights and has lost income, earnings, and other benefits.

69. In addition to monetary damages, Plaintiff seeks injunctive and declaratory relief to correct Northfield's unlawful policies and practices as well as attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Northfield's Violations of New York Labor Law)

70. Plaintiff incorporates by reference all preceding paragraphs.

71. At all relevant times, Plaintiff was employed by Defendant within the meaning of the N.Y. Lab. Law §§ 2 and 651.

72.  Northfield violated N.Y. Lab. Law § 191 by failing to pay Plaintiff proper wages for all hours worked. Specifically, Northfield failed to pay Plaintiff wages for time worked during her one-hour lunch break each day, which was unpaid. Plaintiff performed uncompensated work approximately four times per week during her one-hour lunch break from December 2017 to June 28, 2018. Plaintiff performed uncompensated work for at least 30 minutes of her one-hour unpaid meal break on average four days a week during those weeks.

73.  Northfield's conduct makes it liable for actual damages, liquidated damages, prejudgment interest, punitive damages, and reasonable attorney's fees and costs, in an amount to be determined by the Court.

## **PRAYER FOR RELIEF**

74.  WHEREFORE, Plaintiff seeks the following relief:

   (i)   An award of damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful employment practices, and to otherwise make her whole for any losses suffered as a result of such practices, including back pay;

   (ii)  An award of compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven, as well as liquidated damages;

   (iii) Punitive damages to deter future misconduct in an amount commensurate with Defendant's ability to pay;

   (iv)  Injunctive and declaratory relief including front pay and/or reinstatement;

   (v)   Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

   (vi)  Pre-judgment and post-judgment interest, as provided by law; and

   (vii) Such other and further legal and equitable relief, including nominal damages, as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action.

Dated: New York, New York
June 28, 2021

Respectfully submitted,

**GISKAN SOLOTAROFF & ANDERSON LLP**

By: */s/ Amy E. Robinson*
    Amy E. Robinson

Amy E. Robinson
Jason L. Solotaroff
90 Broad St, 2nd Floor
New York, NY 10004
Tel: (646) 964-9609
Fax: (646) 964-9610
Email: arobinson@gslawny.com

**MOBILIZATION FOR JUSTICE, INC.**

By: */s/ Michael N. Litrownik*
    Michael N. Litrownik

Michael N. Litrownik
Tangier Harper
100 William Street, 6th Floor
New York, NY 10038
Tel: (212) 417-3858
Fax: (212) 417-3890
Email: mlitrownik@mfjlegal.org

*Attorneys for Plaintiff*